IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL O'HANLON, an individual, JONATHAN ROBISON, an individual, GAYLE LEWANDOWSKI, an individual, IRMA ALLEN, an individual, on behalf of themselves and all others similarly situated, and PITTSBURGHERS FOR PUBLIC TRANSIT,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC,<br><br>Defendants. | Civil Action No. 2:19-cv-00675<br><br>Magistrate Judge Lisa Pupo Lenihan<br><br>ECF No. 24 |

**MEMORANDUM OPINION
ON DEFENDANTS' MOTION TO COMPEL ARBITRATION**

**I. SUMMATION**

For the reasons set forth below, the August 23, 2019 Motion to Compel Arbitration filed by Defendants Uber Technologies, Inc.; Rasier, LLC; and Rasier-CA, LLC (collectively "Uber"), ECF No. 24, will be denied.

**II. FACTUAL AND PROCEDURAL HISTORY**

The above-named Plaintiffs (collectively "Plaintiffs") filed a June 11, 2019 Complaint, ECF No. 1, followed by a July 12, 2019 First Amended Complaint, ECF No. 10, seeking class certification and injunctive and declaratory relief. Plaintiffs are Pennsylvania residents and a non-profit corporation headquartered in Pittsburgh,

1

Pennsylvania; Defendants are Delaware corporations. Uber provides a ridesharing service which allows mobile smartphone application ("App") users to call an available vehicle driver when they need transportation.

Plaintiffs - like other plaintiffs in similar actions filed in Federal District Courts against Uber or Lyft, Inc., another ridesharing transportation company - allege that Defendants are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, (the "ADA"). Plaintiffs allege Defendants' violation of both (1) Section 12182's prohibitions of disability discrimination with regard to places of public accommodation and (2) Section 12184's prohibitions with regard to public transportation services provided by private entities.[1] More specifically, Plaintiffs allege that individuals such as themselves, who rely on wheelchairs for mobility and thus also wheelchair accessible vehicles ("WAVs") for transportation, are injured by Defendants' failure to provide any access to its on-demand ridesharing transportation service to

---

[1] *See* First Amended Complaint, ECF No. 10 at 22-23; Plaintiffs' Response in Opposition, ECF No. 35 at 3 (asserting that Defendants' ADA violations have deterred their "patronage of or otherwise interfere[d] with [their] access to a place of public accommodation").

*See also* 42 U.S.C. § 12182 (prohibiting discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation"); § 12184 (prohibiting disability discrimination as to "specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce").

disabled individuals requiring WAVs in Allegheny County, Pennsylvania.  ECF No. 10;

Plaintiffs' Response in Opposition, ECF No. 35 at 1.

> Plaintiffs' allegations include that:
>
> Because the geographic area serviced by accessible public transportation in Pittsburgh is contracting, at the same time that Uber and similar ride sharing services are capturing market share from traditional taxi companies, Uber's discriminatory practices have a profound negative impact upon individuals with mobility disabilities in Pittsburgh . . .
>
> . . . Uber has the ability to provide accessible service without significant disruption to its business model. Uber tightly controls all aspects of how both its drivers and riders use the service, mediating all payments, regulating the types of vehicles the drivers use, and offering financial incentives to ensure that there are enough drivers on the road to meet the demand for rides. Moreover, Uber is already providing widespread wheelchair accessible transportation in London and six other cities around the United Kingdom.

ECF No. 10 at 2.

Plaintiffs further allege that each individual Plaintiff (1) would use Uber but for the unavailability of WAVs and (2) has not downloaded Uber's application because s/he knows that doing so would be futile while WAVs are unavailable through Uber in Pittsburgh.[2]

Customers signing up for Uber's services must download and create an account using the Uber Rider App ("Uber App"). The terms and conditions required to be accepted to use the Uber App ("Terms of Use") include an arbitration provision.

---

[2] Plaintiff Pittsburghers for Public Transit ("PPT"), a project of Thomas Merton Center, Inc., is a public transportation advocacy organization whose members include two individual Plaintiffs and others with mobility disabilities.  ECF No. 10 at 4.

Defendants do not dispute that no named Plaintiff has created an account or entered into a service agreement with Uber.

Defendants filed their Motion to Compel Arbitration and Memorandum of Points and Authorities ("Brief in Support"), ECF No. 24 and 25 respectively, on August 23, 2019; Plaintiffs filed their Repose in Opposition, ECF No. 35, on September 30th; and Defendants filed their Reply in Further Support, ECF No. 38, on October 15th.

### III. ANALYSIS

Uber's service agreement is a contract subject to the Federal Arbitration Act, 9 U.S.C. § 2 (the "FAA") and the District Court must compel a signatory party to a valid arbitration agreement to abide by those terms as to any dispute. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Conversely, parties who have not assented to an arbitration agreement generally cannot be compelled to arbitrate. *E.E.O.C. v. Waffle House*, 534 U.S. 279, 293 (1989); *Bel–Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999) ("Arbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate [arbitration].") Plaintiffs, having "never downloaded the Uber App . . . lacked notice of Uber's terms and conditions, including its embedded arbitration provision, and never manifested their intention to be bound." *Namisnak v. Uber Technologies, Inc.*, 315 F.Supp.3d 1124, 1127 (N.D. Cal. 2018).

Uber's Brief in Support, ECF No. 25, contends that "this is not an appropriate forum", asserting that Plaintiffs are equitably estopped from refusing to arbitrate[3] because (1) their claims necessarily "implicate" Uber's Terms of Use and (2) their standing to sue as deterrence-injury plaintiffs is based on allegations that they would have contracted with Uber but for its discriminatory policies, thus again necessarily incorporating Uber's arbitration conditions.  In sum, Defendants argue that Plaintiffs are barred from Federal forum selection and this litigation because they cannot maintain an action apart from Uber's requisite Terms of Use, *i.e.*, that their claims cannot "exist[] independent of the contract."  ECF No. 38 at 1, 3.

First, Defendants contend – as they did last year, before Judge Seeborg in the Northern District of California - that Plaintiffs who have not entered into a service contract with Uber and raise claims under the ADA are nonetheless equitably estopped from bringing such claims in Federal Court by the arbitration provisions of Uber's service contract because they must rely on the contract terms by which Uber offers goods and services to the general public to bring their action.  *See, e.g.*, ECF No. 38 at 2 ("Plaintiffs are bound by the arbitration agreement in Uber's Terms of Use based on settled principles of equitable estoppel.  Plaintiffs embrace the Terms of Use . . . as a fundamental component of their claim on the merits.");[4]  *id.* at 4-5.  This Court is in

---

[3] The doctrine of equitable estoppel permits enforcement of an arbitration clause against a non-signatory in certain limited circumstances, such as where a plaintiff's claim relies on a defendant's breach of other terms of the same contractual agreement.

[4] Defendants' assertion that Plaintiffs "embraced" Uber's Terms of Use is made in support of their underlying assertion that this case is within the purview of this

5

entire accord with Judge Seeborg's dismissal of this assertion. *Namisnak*, 315 F.Supp.3d 1124.[5]

In *Namisnak*, as here, Uber argues that Plaintiffs necessarily rely on Uber's service contract to bring suit and should therefore be estopped from avoiding its obligations. *Id.* at 1128. As Judge Seeborg explained, however, Plaintiffs "assert claims against Uber

---

Circuit's existing non-signatory case law. *See* ECF No. 38 at 1-2; *Scottsdale Ins. Co. v. Kinsale Ins. Co.*, 253 F.Supp.3d. 796, 800 (E.D. Pa. 2017); *Bouiez v. Carnegie Mellon Univ.*, 359 F.3d 292, 295 (3d Cir. 2004). The cases cited by Defendants are, however, patently inapposite. Moreover, the Court cannot concur with Defendants' overly-broad interpretation of the law of this Circuit regarding the scope of the equitable estoppel exception to bind non-signatories to arbitration. *Cf.* Plaintiffs' Response in Opposition, EFC No. 35 at 5-6.

[5] Defendants' Reply notes that their appeal of Judge Seeborg's April, 2018 decision is pending. ECF No. 38 at 7 (citing *Namisnake v. Uber Techs, Inc.*, No. 18-15870 (9th Cir.)).

Yet this Court observes that, in other recent cases, Defendants do not appear to have alleged that plaintiffs who had not created an Uber account were nonetheless equitably estopped from pursuing their ADA claims in a Federal forum. *See e.g., Crawford v. Technologies, Inc.*, No. 3:17-cv-02664-RS, 2018 WL 1116725 (N.D. Cal. March 1, 2018) (holding that plaintiffs had standing to bring deterrence injury claims under § 12184); *Access Living of Metro. Chicago v. Uber Technologies, Inc.*, 351 F.Supp.3d 1141 & n. 6 (N.D. Ill. 2018) (holding that reasonably deterred plaintiffs had standing to bring injury claims under §§ 12182 and 12184, and observing that plaintiffs may have "intentionally avoided the arbitration agreement that would have accompanied their download and acceptance of the terms of service so that they could seek redress in the court system"). *Cf. National Fed. of the Blind v. Uber Technologies, Inc.*, 103 F.Supp.3d 1073 (N.D. Cal. 2015) (Defendants asserted, in this case which was settled in 2016, only that arbitration was binding on those plaintiffs who had downloaded the Uber App).

The Court also notes that the Northern District of California is not the only District Court to issue an opinion in 2018 holding that similarly-situated plaintiffs were not bound to arbitrate ADA claims by the doctrine of equitable estoppel. *See Lowell v. Lyft, Inc.*, 352 F.Supp.3d 248 (S.D.N.Y. 2018) (holding that doctrine of direct benefits estoppel did not apply so as to require arbitration, and that plaintiffs' claims did not derive from either direct or indirect contract benefits).

based on rights created by the ADA, which are not dependent upon or bound up in the terms and obligations of Uber's service agreement. It is Uber's alleged refusal to comply with the requirements of the ADA, not the requirements of its consumer agreements, which form the basis of this lawsuit." *Id.* The essence of Plaintiffs' Complaint is that they have been excluded – by Defendants' disability discrimination – from participation in Defendants' increasing market share of available public transportation. Defendants reply that they could not be charged with illegal discrimination if they were not offering goods or services and thus their contract provisions apply.

Defendants elected to offer goods and/or services and in doing so were required to comply with any applicable Federal regulations, including the ADA; thus they can be charged with violation of Federal disability laws. Defendants' liability, if any, arises from their conduct as measured against the provisions of Federal law. The *sine qua non* is the ADA.[6] As Plaintiffs argue, their claims are "based on Uber's failure to comply in its business practices with anti-discrimination law . . . ." ECF No. 35 at 2.

Second, Defendants contend that Plaintiffs necessarily "embrace" Uber's Terms of Use "for their benefit . . . in pursuit of Article III standing." ECF No. 38 at 1; ECF No. 25 at 5. More specifically, Defendants contend that Plaintiffs embrace the contract by asserting a deterrent-effect injury and thus seeking "essentially to step into the shoes" of

---

[6] *Compare, e.g.*, *Scottsdale*, 253 F.Supp.3d at 802-03 (holding non-signatory bound to defendant insurer's arbitration provisions where claims depended "almost entirely on the scope of [insurer's] policy and the coverage . . . owed its insured"); *id.* at 803 (noting that "the instant case concerns equitable subrogation").

7

"actual Uber Rider App users who all are bound by Uber's Terms of Use." ECF No. 38 at 2-3.

Plaintiffs' Article III standing is established by (1) injury in fact, (2) causal connection, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-61 (1992). As to the element here at issue, injury in fact, Plaintiffs correctly quote the ADA's provision that its protections include any person "who has reasonable grounds for believing" s/he will be subjected to discrimination. 42 U.S.C. § 12188(a)(1). *See* ECF No. 35 at 3.[7] Also relevant is the Supreme Court's 1977 conclusion – in its lengthy Opinion on race discrimination in employment – that one "can be a victim of unlawful discrimination entitled to make-whole relief" despite being unwilling "to engage in a futile gesture" or "useless act", or "subject [oneself] to the humiliation of explicit and certain rejection." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 366-67 (1977).

Indeed, as the Ninth Circuit has noted, the ADA's provision that "it does not require 'a person with a disability to engage in a *futile gesture* if such person has actual notice that a person or organization . . . does not intend to comply' with the ADA" is "taken from *Teamsters*", which "held that plaintiffs who did not actually apply . . . could nevertheless challenge" discrimination "if they could show that they would have

---

[7] *See also id.* at 1, 3; *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1042 (9th Cir. 2008) (holding that when a disabled individual "become[s] aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, *he has already suffered an injury in fact* traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III . . . .") (emphasis added); *accord Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 480 (3d Cir. 2018).

applied . . . if not for [such] discriminatory practices." *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136 (9th Cir. 2002) (citing Section 12188(a)(1) and noting that these provisions "[s]eek to avoid unreasonable burdens on ADA plaintiffs"); *see also id.* ("Congress specifically intended that *Teamsters*' 'futile gesture' reasoning be applied to ADA claims. *See* H. Rep. No. 101-485(II) at 82-83 (1990) *reprinted in* 1990 U.S.C.C.A.N. 303, 365 ('The Committee intends for this doctrine to apply to this title')").

To be clear, then, an individual's standing to bring a claim for disability discrimination under the ADA is not dependent on his/her undertaking futile gestures. To the contrary, such plaintiffs have their own standing; their deterrence-based injury is actual, cognizable and their own. *See* ECF No. 35 at 1 ("Plaintiffs . . . would have attempted to use Uber's services to travel to and from activities, but did not, because they knew— as a result of incidents they witnessed or heard about from friends and family—that Uber's services are inaccessible to them."), *id.* at 3 (quoting Section 12188(a)(1)).[8] Compare ECF No. 38 at 3.

---

[8] As the District Court for the Northern District of Illinois recently observed:

> [Plaintiffs] did not have to download the app and request an Uber ride to be injured. They saw the app, learned of the lack of wheelchair-accessible rides, and want to use the app in future but reasonably believe they cannot. That is sufficient. Their allegations that they are currently deterred from using Uber and that Uber has no intention of making modifications establish [their standing] to seek prospective injunctive relief.

*Access Living,* 351 F.Supp.3d at 1150.

In addressing the parties' arguments on the available substantive rights remedies for the employer's unlawful discrimination, the Supreme Court in *Teamsters* faced the open question of "whether [retroactive] seniority relief may be awarded to nonapplicants". 431 U.S. at 364.[9] It held that deterrence-injury plaintiffs – *e.g.*, those who did not endeavor employment with a defendant whose known discrimination would make it a "vain gesture" - were "*as much [victims] of discrimination* as [those] who [went] through the motions" *and could thus be entitled to the same employment redress* when the District Court fashioned relief to effect the most complete, discrimination-deterrent restitution possible. *Id.* at 364-367 (emphasis added). Defendants' representation that this "seminal decision on deterrent-effect injuries" places Plaintiffs in "the same litigation position" as individuals who actually contracted with Uber - *i.e.*, that they are bound to Uber's arbitration agreement and precluded from selecting a Federal forum – reflects a fundamental misreading of *Teamsters*. See ECF No. 38 at 1.[10]

---

[9] *Cf.* Brief in Support, ECF No. 25 at 6 ("In *Teamsters*, . . . for relief, the government sought . . . to give seniority to individuals who had not applied . . . for a job.").

[10] *See* ECF No. 35 at 4 (correctly observing that "[t]his theory has no basis in law"); *id.* at n. 1 ("Nothing in *Teamsters* indicates that deterred plaintiffs must bind themselves to terms of use applicable to those who use the service in order for their claims to survive . . . .").

*Compare* ECF No. 38 at 3 (asserting that it "is the teaching" of *Teamsters* that by alleging deterrent-effect injuries "Plaintiffs necessarily seek to stand in the shoes of actual Uber Rider App users" and are "treated, for litigation purposes, as though" they "sought and [were] denied benefits"); ECF No. 25 at 7 (citing J. Stevens' dissent in *Teamsters* with a parenthetical that "*Teamsters* puts a non-applicant in the same position as an applicant, *such that* [*i.e.*, so that, to the extent that] the non-applicant is 'entitled to the same relief'" yet asserting therefrom that "[t]hus, under *Teamsters*, a plaintiff claiming a deterrent-

10

Moreover, Defendants' briefing notwithstanding, the Third Circuit's Opinion in

*Bates v. Tandy Corp.*, 186 F.App'x 288 (3d Cir. 2006), merely distinguished *Teamsters* from

*Bates* - an employment race discrimination case dismissed on summary judgment -

noting that the record did not support plaintiffs' claim of futility and that:

> [In *Teamsters*], it was already established that employees who had applied
> for promotions were denied because of their race. The question was
> simply whether those who had been discouraged from applying . . .
> because of that history would be allowed to piggy back on the
> employment discrimination claims of those who did apply . . . . Here,
> [plaintiffs] have no comparable basis for establishing that they would not
> have received the promotions had they applied . . . .

186 F.App'x at 293-94 (citing *Teamsters*, 431 U.S. at 363-64).

The Ninth Circuit's Opinion in *Pickern* affirmed the applicability of *Teamsters'*

"futile gesture" doctrine to determinations that deterrence-based injuries are

independent, cognizable claims under the ADA. 293 F.3d at 1136.[11] Neither *Bates* nor

*Pickern* support Defendants' assertion that these ADA deterrence-injury plaintiffs must

"seek essentially to step into the shoes" of their Riders App beneficiaries to attain

---

effect injury is always pursing a legal theory that entitles the plaintiff to stand in someone else's shoes").

[11] The Ninth Circuit reversed the District Court's dismissal and remanded this case, holding that "[W]hen a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers . . . that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury . . . . When such a plaintiff seeks injunctive relief against an ongoing violation, he or she is not barred from seeking relief either by the statute of limitations or by lack of standing." 293 F.3d at 1135. *See also id.* at 1139 (holding that deterrence injury plaintiff had "standing under the ADA and under Article III").

Article III standing and are thus contractually barred from their Federal forum selection rights. *Compare* ECF No. 38 at 3-4. [12]

In sum, Defendants' assertions - that non-signatory Plaintiffs are equitably estopped from filing an ADA action in this forum because (1) Defendant's Terms of Use are necessarily "embraced" by Plaintiffs' claims under the ADA and/or (2) Plaintiffs must necessarily "stand in the shoes" of individuals who have embraced Defendants' Terms of Use – are equally meritless.[13] As referenced *supra*, whether compliance with the ADA requires Uber, a private rideshare entity, to provide transportation service access to people with mobility disabilities—under either Section 12182 or 12184—is the subject of several recent Federal court actions. It is also a question which may be increasingly informed by expansion and developments in the operations of rideshare companies in the transportation marketplace.

**IV. CONCLUSION**

---

[12] Nor do *Bates* or *Pickern* contain any mention of the "step into the shoes" language employed by the *Scottsdale* Court in holding, in litigation between insurers, that where plaintiff brought claims for indemnification and equitable subrogation, it sought "essentially to step into the shoes of [insured] and exercise the rights and remedies . . . available to [insured] under the Subcontract" thus equitably binding plaintiff to the underlying contract terms. 253 F.Supp.3d at 802-03. *See also id.* at 803 (noting that plaintiff's claims were "entirely dependent" on defendant's obligation to provide coverage under the [policy] for the underlying claim"); *supra* n. 6.

[13] *Cf.* ECF No. 35 at 8 (observing that Defendants seek to "shield them[selves] against any prospective plaintiff who has already been wronged by their discrimination, even one who never agreed to the contract precisely because of that discriminatory conduct" and that the ruling they seek "would provide Uber and similar entities with immunity from having their obligations under civil rights law heard in court").

Accordingly, the August 23, 2019 Motion to Compel Arbitration filed by Defendants Uber Technologies, Inc.; Rasier, LLC; and Rasier-CA, LLC (collectively "Uber"), [ECF No. 24](ECF No. 24), will be denied. A separate Order will be entered.

Dated: November 12, 2019

BY THE COURT:

_____
LISA PUPO LENIHAN
United States Magistrate Judge